**REVERSE and REMAND; and Opinion Filed August 8, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00091-CV

## IN THE INTEREST OF B.N.G. AND G.J.G., MINOR CHILDREN

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-56335-2014**

## MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Pedersen, III

In this suit affecting the parent-child relationship, Nash Gonzales, the plaintiff in the case

below, appeals a summary judgment rendered against him. We reverse and remand.

### I.
### Background

Gonzales (Father) and appellee Marissa Maggio (Mother) married in 1999[1] and resided in

Austin, which is located in Travis County. They have two sons, B.N.G. and G.J.G.[2] In 2011,

Mother filed for divorce in Travis County, and Father filed a counter-petition for divorce. In

February 2013, a jury trial was held in Travis County District Court. On February 22, the jury

determined that Mother and Father should be appointed as joint managing conservators but that

Mother should have the exclusive right to designate the children's primary residence. However,

---

[1] Mother took the surname Gonzales while married to Father, but she has since changed her surname to Maggio.

[2] B.N.G. was born in October 2005, and G.J.G. was born in April 2008.

the jury also determined that Mother should not be permitted to designate a primary residence outside the State of Texas. On February 25, the district court orally rendered judgment granting a divorce and prescribing conservatorship and residency terms consistent with the jury's verdict.

In April 2013, Mother moved with the children to Collin County, and Father also relocated there that same month. Back in Travis County, the district court determined the remaining property issues in the divorce proceeding. The court signed a final decree of divorce on August 29, 2013, and an amended/corrected final decree on December 9, 2013.[3] Father appealed the judgment.[4] The Third Court of Appeals affirmed the decree as to the geographic restriction but reversed and remanded, in part, the trial court's award of interest. *See Gonzales v. Maggio*, 500 S.W.3d 656, 659 (Tex. App.—Austin 2016, no pet.).

In October 2014, while the appeal in the divorce suit was pending, Father filed a petition to modify parent-child relationship in Travis County District Court,[5] which was the court of continuing jurisdiction.[6] The court transferred the case to Collin County District Court, which was in the county of the children's new residence.[7] Thereafter, Father filed three amendments to his petition to modify. Father's live pleading, his fourth amended petition to modify,[8] alleged that "[t]he circumstances of the children, a conservator, or other party affected by the order to be

---

[3] The December 9 decree gave Mother certain exclusive rights, including (i) the right to designate the primary residence of the children within the State of Texas; (ii) the right to consent to medical, dental, and surgical treatment involving invasive procedures; and (iii) the right to consent to psychiatric and psychological treatment of the children. This same decree also gave both parents certain shared rights, including (i) the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children; (ii) the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children; (iii) the right of access to medical, dental, psychological, and educational records of the children; (iv) the right to consult with a physician, dentist, or psychologist of the children; and (v) the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children.

[4] Father and Mother are both lawyers and were law partners prior to their divorce. Their law firm, Gonzales & Gonzales, P.C., was also an appellant.

[5] *See* TEX. FAM. CODE ANN. § 156.004 (noting that Texas Rules of Civil Procedure applicable to filing an original lawsuit apply to a suit for modification).

[6] *See* TEX. FAM. CODE ANN. §§ 152.202, 155.001.

[7] *See* TEX. FAM. CODE ANN. § 155.201(b) (providing for transfer of suit to modify "to another county in this state if the child has resided in the other county for six months or longer").

[8] Throughout this opinion, we refer to Father's live petition as "the petition to modify."

modified have materially and substantially changed" since the February 25, 2013 oral order divorcing the parties and since the December 9, 2013 divorce decree. *See* TEX. FAM. CODE ANN. § 156.101(a)(1) (providing grounds for modification of order establishing conservatorship or possession and access). According to the petition, "[s]uch circumstances include, but are not limited to," the following: (i) "[Mother] has repeatedly failed to heed the recommendations of medical professionals and educators regarding the children's physical health, emotional health, and educational needs with the effect that [G.J.G.] cannot read and [B.N.G.] has been referred to Children's Hospital for an eating disorder[ ]"; (ii) "[Mother] relocated to Collin County"; (iii) "[Mother] has repeatedly tried to prevent [Father's] participation in extracurricular activities scheduled for the children"; and (iv) "the present living environment and conditions may endanger the physical health and education or significantly impair the emotional development of the children." The fourth amended petition also attached and incorporated an affidavit signed by Father that provided additional details regarding the alleged changes in the children's circumstances. The petition requested, among other relief, that the court (i) grant Father "the exclusive right to determine the children's primary residence" and (ii) assign Father the exclusive parental rights and duties regarding the children's educational, medical, dental, surgical, psychiatric, or psychological needs.[9]

On February 26, 2016, Mother filed a counter-petition to modify parent-child relationship. She alleged that the December 2013 divorce decree had become unworkable because Father violated the decree by taking the children to the doctor without properly notifying Mother. The counter-petition requested, among other relief, that the court (i) "grant [Mother] the exclusive right to make all medical decisions regarding the children" and (ii) "prohibit [Father] from making any

---

[9] In addition, the petition included a first amended motion for temporary orders, in which Father sought various "temporary orders for the safety and welfare of the children." The district court held a hearing on this motion on January 29, 2016. Following this hearing, the court denied the motion.

unilateral decisions without [Mother's] written consent relating to medical treatment, testing or diagnosis, [or] psychological or psychiatric counseling decisions related to the children." Mother subsequently nonsuited her counter-petition, and the court signed an order dismissing all of her pending claims without prejudice.

On June 2, 2017, Mother filed a motion for summary judgment. The motion attached several exhibits in support and urged that no material change of circumstances had occurred since the December 2013 divorce decree. It also asked that the court deny Father's requested modification and award Mother her attorney's fees. Thereafter, Mother filed a first amended motion for attorney's fees, in which she requested a hearing to be followed by an order awarding such fees. The amended motion also requested an award of additional fees should Mother prevail in an appeal.

The court held a hearing on Mother's summary-judgment motion on July 26, 2017, and a hearing on her fee request on October 23, 2017. The next day, on October 24, the court signed an order that granted both the motion for summary judgment and Mother's first amended motion for fees. The court ordered Father to pay Mother's attorney's fees in the amount of $110,997.97 for services rendered in the trial court, plus additional fees in the event of an unsuccessful appeal to the Court of Appeals or to the Texas Supreme Court.

Father filed a motion to reconsider the court's summary-judgment order. The court conducted a hearing on this motion on January 18, 2018, and signed an order that same day denying the motion. Father then perfected this appeal.

## II.
## Analysis

Father raises two issues. His first issue contends that the summary-judgment order was erroneous. We review a trial court's summary judgment ruling de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

## A.     Type of Summary-Judgment Motion

Mother's motion for summary judgment urges, based on evidence attached to, or discussed in, the motion, that "no material change of circumstances has occurred since the rendition of the Amended Decree of Divorce signed on December 9, 2013." Among other evidence, the motion relies on the testimony of Dr. Roger Schorlemer, a pediatrician who treated the children during part of the period subsequent to the February 2013 order. Mother does not dispute Father's contention that her summary-judgment motion is a traditional motion. The district court treated the motion as such, and so will we. Accordingly, Mother, as the movant on a traditional motion, bore the burden of (i) conclusively negating an element of Father's claim or (ii) pleading and conclusively establishing each essential element of an affirmative defense. *See Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 717 (Tex. App.—Dallas 2014, pet. denied). We view the evidence "'in the light most favorable to [Father], crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not.'" *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018) (quoting *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)).

## B.     Scope of Review

Mother filed twelve exhibits in support of her motion for summary judgment. Father contends that six of these exhibits were not authenticated[10] and four were filed untimely.[11] Mother responds with several arguments as to why, in her view, these exhibits were admissible and are not beyond the scope of our review even though some of them were filed late. We need not address these issues. Even assuming the foregoing exhibits qualified as proper summary judgment evidence, Mother is not entitled to summary judgment, as we discuss below.

---

[10] Specifically, Exhibits A, B, D, E, G, and H to Mother's summary-judgment motion, filed on June 2, 2017.

[11] *See* Exhibits A and B to Mother's reply to Father's response to motion for summary judgment, filed July 24, 2017; Exhibits A and B to Mother's second reply to Father's response to motion for summary judgment, filed July 25, 2017.

## C.     Mother's Burden to Negate Father's Claim

We first consider whether Mother, as the movant, conclusively negated at least one element of Father's modification claim—specifically, the element of a "material and substantial change" in circumstances. The statutory provision relevant to this element provides, in pertinent part, that:

> (a) The court may modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the best interest of the child and:
>
> (1) the circumstances of the child, a conservator, or other party affected by the order have *materially and substantially changed since* the earlier of:
>
> > (A) *the date of the rendition of the order*; or
> >
> > (B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based.

TEX. FAM. CODE ANN. § 156.101(a)(1) (emphases added). "In considering whether a material and substantial change in circumstances has occurred, the trial court compares the evidence of the conditions that existed at the time of the entry of the prior order with the evidence of the conditions that existed at the time of the hearing on the petition to modify." *In re H.N.T.*, 367 S.W.3d 901, 904 (Tex. App.—Dallas 2012, no pet.). The existence, or not, of such a change "is a fact-specific determination that is not guided by rigid rules." *In re C.F.M.*, No. 05-17-00141-CV, 2018 WL 2276351, at *2 (Tex. App.—Dallas May 18, 2018, no pet.) (mem. op.); *see also In re T.A.M.*, No. 13-16-00005-CV, 2017 WL 711636, at *4 (Tex. App.—Corpus Christi–Edinburg Feb. 23, 2017, no pet.) (mem. op.) ("In a custody modification proceeding, the trial court is not confined 'by rigid rules,' but conducts a broad, 'fact-specific' inquiry which may encompass any major changes that affect the child's emotional and physical well-being or the parent's ability to support that well-being.").[12]

---

[12] Mother's summary-judgment motion urged that res judicata applies to Father's petition to modify because "the issues and concerns" raised in Father's petition "are the same or similar to those that were raised and litigated in the divorce trial." *See Knowles v. Grimes*, 437 S.W.2d 816,

As noted previously, Mother's motion urged that no material change in circumstances occurred subsequent to the December 2013 divorce decree. Mother contends that, to obtain a summary judgment, her motion need only address the specific changes alleged in Father's petition. Father responds by noting that his petition alleged changed circumstances that "include, but are not limited to," the circumstances specifically alleged therein. He notes that Mother did not specially except to the petition. *See* TEX. R. CIV. P. 91; *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam) ("The purpose of a special exception is to compel clarification of pleadings when the pleadings are not clear or sufficiently specific or fail to plead a cause of action."). Father contends that, because Mother did not do so, she now faces the burden of conclusively negating all possible grounds for a modification.

As support, Father cites this Court's decision in *Bagwell v. BBVA Compass*, No. 05-14-01579-CV, 2016 WL 3660403 (Tex. App.—Dallas July 7, 2016, no pet.) (mem. op.). In that case, the defendant, as the summary-judgment movant on its statute of frauds affirmative defense, bore the burden of establishing that the only damages plaintiffs sought and could recover were benefit-of-the-bargain damages. *Id.* at *6. However, the plaintiffs' damages allegations were conclusory, and the defendant did not file special exceptions to the plaintiffs' pleadings that requested more specificity. *Id.* at *5–6. Nor did the defendant attempt to prove that the plaintiffs suffered no out-of-pocket damages. *Id.* at *6. Because of the lack of specificity in the plaintiffs' pleadings regarding the nature of the damages claimed and the possibility that the plaintiffs might be able to allege recoverable out-of-pocket damages, we could not conclude that the defendant conclusively established its statute-of-frauds affirmative defense as to those damages. *Id.*

---

817 (Tex. App.—Dallas 1969, no writ) ("A final judgment in a custody proceeding is res judicata of the best interests of a minor child as to conditions then existing."). However, res judicata does not apply as to conditions that have materially and substantially changed since the rendition of the prior order. *See id.* ("There must be a showing of materially changed conditions to authorize a change of custody.").

Here, Mother did not specially except to the phrase "include, but are not limited to" in Father's petition. Nor does she point to any evidence in the record—for example, deposition testimony or written discovery responses—in which Father catalogs all of the circumstances to which this phrase refers. Instead, Mother's summary-judgment motion addresses only the purported changes specifically alleged by Father. In this circumstance, we cannot conclude that Mother conclusively established the absence of a material and substantial change in circumstances. In addition, even if Mother were not required to address unpled circumstances subsumed within the foregoing "include, but are not limited to" allegation, we conclude that her motion was nevertheless required to address each of the factual circumstances alleged in Father's petition and to conclusively demonstrate that none of these circumstances constitute a material and substantial change. As explained herein, we conclude that Mother did not meet this burden with respect to the allegation that she moved to Collin County subsequent to the divorce.

It is undisputed that Mother moved to Collin County with the children in April 2013, and Father followed her there that same month. Mother's move occurred after the court's February 2013 oral rendition of divorce but before the December 2013 divorce decree. The parties dispute which of these rulings should be used as the reference point for determining whether a material and substantial change has occurred subsequent to the order to be modified, as is contemplated by section 156.101. Father urges that the February oral ruling—hereinafter referred to as the February 2013 order—is the pertinent order, and thus the April move qualified as a material and substantial change. *Cf. In re K.R.Z.*, No. 04-14-00876-CV, 2015 WL 4478123, at *2 (Tex. App.—San Antonio July 22, 2015, no pet.) (mem. op.) (holding that "the date of the rendition of the order," as such term is used in Family Code section 156.102(a), "does not require a written, signed order").

Mother responds that the December 2013 divorce decree is the relevant order, and thus the April move could not qualify as a material and substantial change. As support for her position,

Mother cites *In re C.Q.T.M.*, 25 S.W.3d 730, 734–35 (Tex. App.—Waco 2000, pet. denied). Our sister court in that case stated that "[s]ection 156.101(a)(1) requires a material change of circumstances subsequent to the rendition of the *custody decree* sought to be modified," based on the principle that "the prior decree 'is *res judicata* of the best interests of the child as to conditions existing at that time.'" *Id.* (first emphasis added; second emphasis in original) (quoting *Scroggins v. Scroggins*, 753 S.W.2d 830, 832 (Tex. App.—Houston [1st Dist.] 1988, no writ)). In contrast to *C.Q.T.M.*, the Texas Supreme Court held in *Dunn v. Dunn* that an oral rendition of divorce constituted a final judgment even though the order was not signed until after the spouse died. 439 S.W.2d 830, 832–33 (Tex. 1969); *see also Luna v. Bennett*, No. 05-16-00878-CV, 2018 WL 5993902, at \*2 (Tex. App.—Dallas Nov. 15, 2018, no pet.) (mem. op.) ("Once a judgment is rendered by oral pronouncement, entry of a written judgment is purely a ministerial act.").

Whatever the res judicata effects may be of an oral rendition of divorce, we conclude that principles of statutory construction determine which of the foregoing orders is pertinent to resolving this appeal. Specifically, section 101.026's definition of "render," which includes an oral pronouncement, TEX. FAM. CODE ANN. § 101.026, applies to the phrase "rendition of the order" as used in section 156.101(a)(1)(A), *see* TEX. FAM. CODE ANN. § 101.001(a) (providing that "[d]efinitions in the subchapter apply to this title [The Parent-Child Relationship and the Suit Affecting the Parent-Child Relationship]"); *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 636 (Tex. 2013) ("If a term is expressly defined by statute we must follow that definition." (citing TEX. GOV'T CODE ANN. § 311.011(b))). On this basis, we conclude that the court's February 2013 order is the pertinent order under the statute.[13] Accordingly, the April 2013

---

[13] Our holding in this regard also disposes of Mother's contention that Father did not comply with Family Code section 156.102 because his original petition did not submit an affidavit as required by the statute. Section 156.102 provides that "a suit seeking to modify the designation of the person having the exclusive right to designate the primary residence of a child," if "*filed not later than one year after the . . . date of the rendition of the order*," must "attach an affidavit" that contains supporting facts and other specific allegations. TEX. FAM. CODE ANN. § 156.102 (emphasis added). Since the subject order was rendered on February 25, 2013, *cf. In re K.R.Z.*, 2015 WL 4478123, at \*2, Father's original petition to modify, filed in October 2014, was not filed within one-year of such order. Accordingly, section 156.102 did not apply.

move to Collin County occurred "*since . . .* the date of the rendition of the order." TEX. FAM. CODE ANN. § 156.101(a)(1)(A).

Mother also urges that her move was not a material and substantial change because she stayed within Texas and thus did not violate the order's geographic restriction. As support, Mother cites this Court's decision in *In re H.N.T.* The mother in that case lived in Houston at the time of the August 2000 divorce. *Id.* at 902. The divorce decree named her as the primary conservator of the couple's child with no geographic restriction. *Id.* The mother then moved to Grayson County with the child and lived there for ten years, at which time she informed the father that she planned to return to Houston with the child. *Id.* The trial court granted the father's amended motion to modify, but this Court reversed on appeal. *Id.* at 903–05. We based our decision on the fact that the original divorce decree did not contain a geographic restriction and, at the time it was signed, the mother lived in Houston. *Id.* at 905. Accordingly, her desire to move the child back to Houston did not establish a material and substantial change in circumstances. *Id.* We noted that, "[i]f anything, it represents an anticipated circumstance because Father knew nothing within the decree prohibited Mother from moving with [the child] at anytime to anywhere." *Id.*

Unlike in *H.N.T.*, in this case the requested modification was premised on Mother's move to a place (Collin County) different from where she resided at the time of the original order (Travis County). Moreover, the fact that the original order did not prohibit Mother from moving within Texas is not evidence that she anticipated moving at the time of the order. *See In re C.F.M.*, 2018 WL 2276351, at *4 ("The fact that the divorce decree did not prohibit Mother from moving is not evidence that she anticipated moving at the time of the decree."). Thus, we conclude that *H.N.T.* is distinguishable from this case and does not support Mother's argument that her move to Collin County could not qualify as a material and substantial change.

Finally, Mother notes that other Texas courts have articulated several factors for determining whether a relocation should be considered a material change in circumstances. *See e.g., In re P.M.G.*, 405 S.W.3d 406, 412 (Tex. App.—Texarkana 2013, no pet.). She contends that Father made no allegation regarding these factors in his petition or in his appeal brief, nor did he present any evidence regarding these factors in his summary-judgment response. We are not persuaded by Mother's argument because she bore the burden, as the summary-judgment movant, to conclusively demonstrate the absence of a material and substantial change in circumstances since the rendition of the original order. *See Lawyers Title*, 424 S.W.3d at 717. Based on this record, we conclude that Mother has not demonstrated as a matter of law that her relocation to Collin County was not such a change. *Cf. In re P.M.G.*, 405 S.W.3d at 412 ("Deciding whether the move causes a substantial and material change requires intensive examination of the facts of each case."). Accordingly, the district court erred in granting Mother's motion for summary judgment.

**D.    Alternatively, Father's Burden to Raise a Fact Issue**

Mother's failure to meet her summary-judgment burden requires that we reverse and remand this case for trial. *See James M. Clifton, Inc. v. Premillenium, Ltd.*, 229 S.W.3d 857, 859 (Tex. App.—Dallas 2007, no pet. ("[A] nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense."). However, even if Mother had met her burden, the evidence filed by Father in opposition to Mother's motion raised several genuine issues of material fact that precluded the rendition of summary judgment for Mother. *See Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) ("If the movant carries [its] burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment"). We address this evidence below.

–11–

### 1. B.N.G.'s medical challenges

#### a. Father's evidence

Father's evidence shows that Mother first brought B.N.G. to Dr. Schorlemer's pediatric practice on November 12, 2013. Father submitted an affidavit from Dr. Schorlemer, in which the doctor avers that B.N.G.'s weight and Body Mass Index (BMI) were of a particular concern. On January 6, 2015, Dr. Schorlemer recommended in writing that B.N.G. be evaluated for an anxiety disorder and a possible eating disorder. Dr. Schorlemer avers that Mother "did not express . . . any intention to take any action in response to my concerns and recommendations." Instead, Mother changed the children's pediatrician to Dr. Lata Shridharan.[14] Dr. Schorlemer avers that Mother stopped taking the children to his office but that Father has continued to do so. According to Dr. Schorlemer, Mother has attempted to disrupt some of these visits and has indicated in writing that the children no longer require his services.

After Dr. Schorlemer's referral, Children's Medical Center of Plano (Children's) reviewed B.N.G.'s pediatric records and indicated on February 11, 2015, that B.N.G. was eligible for admission to a ten-week outpatient program for eating disorders. However, B.N.G.'s medical records from Children's note that Mother refused the proposed evaluation and treatment.

Father also avers that he informed Dr. Schorlemer that B.N.G. broke his finger four times subsequent to the family's move to Plano, including in January 2015 and in May 2015. In Dr. Schorlemer's opinion, brittle fingers are associated with eating disorders. In part for this reason, he referred B.N.G. to Children's on September 16, 2015, for evaluation with respect to an anxiety disorder and a possible eating disorder. According to Dr. Schorlemer, "it is in the best interest of [B.N.G. and G.J.G.] to receive the evaluations and treatments I have recommended," and Mother's

---

[14] Father avers that Mother made this change without consulting him in advance. On August 6, 2015, Mother again changed the children's pediatrician to Dr. Bain, with Healthy Kids Pediatric Group, again without advance notice to Father.

failure to follow such recommendations "may endanger the physical health of both children and/or significantly impair their emotional development."

In addition, Father avers that B.N.G. fainted on April 29, 2016, while sitting at the breakfast table at home. Father took B.N.G. to the emergency room at Children's, and Mother joined them there. The hospital records from this incident reflect that Dr. Jessica Sharry Williams advised that B.N.G. had "low calcium," "low albumin," and a "poor nutritional assessment with [a] low BMI." Despite this diagnosis, Mother was "not willing to address [the] possible eating disorder." [15] In addition, Father avers that Mother has interfered with his rights to participate in the children's medical care. In Father's view, such interference has deprived the children of "much needed medical evaluation and treatment as recommended by doctors, including doctors whom [Mother] originally chose."

### b. Mother's objections to Father's evidence

Mother urges that portions of the foregoing affidavits are conclusory and thus constitute no evidence. *See Paragon Gen. Contractors, Inc. v. Larco Constr. Inc.*, 227 S.W.3d 876, 883 (Tex. App.—Dallas 2007, no pet.) ("An affidavit that is conclusory is substantively defective, and the failure to object or obtain a ruling on an objection does not waive the substantive defect."). Specifically, Mother objects that Dr. Schorlemer provides no facts to support his averments that (i) he "recommended in writing . . . that [B.N.G.] be evaluated for an anxiety disorder and possible eating disorder," and (ii) "[Father] is rightfully concerned about [B.N.G.'s] need for evaluation and treatment." To the contrary, Dr. Schorlemer's affidavit attaches copies of the subject written recommendations. Moreover, his opinion regarding B.N.G.'s need for evaluation is based on facts,

---

[15] The hospital records also reflect that, upon B.N.G.'s discharge on April 29, 2016, he was referred for a follow-up with Children's Legacy Nutrition. The record does not show whether this appointment ever took place.

including B.N.G.'s brittle fingers, which, in Dr. Schorlemer's opinion, are associated with eating disorders.

Mother also notes that Dr. Schorlemer refers to a "possible" eating disorder throughout his affidavit. She contends that the word "possible" is not evidence of an actual disorder, citing the Texas Supreme Court's requirement that expert testimony must be based on "reasonable probability," not "mere possibility." *Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W.3d 338, 350 (Tex. 2015). While B.N.G.'s "possible" eating disorder has not yet been confirmed, the foregoing evidence of Mother's refusal to heed the recommendations of Dr. Schorlemer and other medical professionals raises a genuine issue of material fact regarding the existence of a material and substantial change in circumstances.

In addition, Mother urges that Dr. Schorlemer's and Father's affidavits are inconsistent with their prior testimony. She appears to make this argument for the purpose of establishing that the affidavits are "sham affidavits." *See Lujan*, 555 S.W.3d at 87 ("Under Rule 166a(c), a trial court may conclude that a party does not raise a genuine fact issue by submitting sworn testimony that materially conflicts with the same witness's prior sworn testimony, unless there is a sufficient explanation for the conflict."). An objection that an affidavit is a "sham affidavit" is a defect of form that must be timely objected to in, and ruled on by, the trial court. *City of Dallas v. Papierski*, No. 05-17-00157-CV, 2017 WL 4349174, at *2 (Tex. App.—Dallas Oct. 2, 2017, no pet.) (mem. op.); *In re T.A.D.*, No. 14-16-00717-CV, 2017 WL 924550, at *5 (Tex. App.—Houston [14th Dist.] Mar. 7, 2017, no pet.) (mem. op.). "To preserve objections to summary judgment evidence for appeal, a party asserting the objections must obtain a ruling at or before the summary judgment hearing." *Essex Crane Rental Corp. v. Cater*, 371 S.W.3d 366, 383 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Mother first raised her "sham affidavit" objection in her response to

Father's motion to reconsider, which she filed on January 10, 2018, after the summary-judgment ruling. Accordingly, this objection was waived.[16]

Moreover, even had Mother preserved her "sham affidavit" objection, Dr. Schorlemer's prior testimony does not conflict with the averments in his subsequent affidavit. Specifically, Mother notes that, at the January 29, 2016 temporary orders hearing, Father's counsel asked Dr. Schorlemer if B.N.G.'s present circumstances, assuming no changes were made, would significantly impair his physical health or emotional development. Dr. Schorlemer responded, "[t]hat's not a yes or no answer," but, instead, a "maybe." This answer is not inconsistent with Dr. Schorlemer's subsequent averment that Mother's failure to follow his recommendations "may" endanger the children's physical health and/or significantly impair their emotional development. Mother also points to Dr. Schorlemer's prior testimony from the temporary orders hearing that, at an appointment in December 2015, B.N.G. appeared "normal" and with "no acute distress," although "extremely thin." Dr. Schorlemer also acknowledged that B.N.G.'s thin appearance was not a surprise given that the boy's parents were slender. This prior testimony is not inconsistent with Dr. Schorlemer's subsequent averment that brittle fingers are associated with eating disorders, thus necessitating a more in-depth medical evaluation with respect to B.N.G.[17]

### 2. G.J.G.'s medical challenges

#### a. Father's evidence

Dr. Schorlemer avers that Mother first brought G.J.G. to his practice on June 20, 2013. After examining the child, conferring with both of his parents, and reviewing his past medical records, Dr. Schorlemer recommended in writing on January 6, 2015, that G.J.G. be evaluated and

---

[16] In addition, Mother's appellate brief fails to support her argument with case law explaining the "sham affidavit" doctrine and applying it to the facts of this case. *See* TEX. RS. APP. P. 38.1(i), 38.2; *Papierski*, 2017 WL 4349174 at *2 n.2.

[17] Mother also points to Father's March 15, 2017 deposition testimony that B.N.G.'s weight was "appropriate today," though "on the thinner side." This testimony is not inconsistent with Father's subsequent averment that Mother's interference with Father's attempts to obtain medical evaluation and treatment for the children, as recommended by doctors, may endanger their physical health and/or significantly impair their emotional development.

treated for a learning disorder and attention deficit hyperactivity disorder (ADHD) due to his cognitive, learning, and behavioral challenges. On February 4, 2015, G.J.G. suffered a seizure following a head injury that he sustained while at school. G.J.G. was taken to the hospital and a CT scan was performed. The scan revealed that G.J.G.'s brain "had a normal appearance," but the medical provider who saw the child recommended a follow-up appointment with Dr. Patricia Mireles of Texas Child Neurology. Father avers that he scheduled such an appointment, but Mother canceled it.

On June 11, 2015, Dr. Mireles examined G.J.G. for the purpose of assessing his "overall cognitive ability . . . in terms of his development." Following this examination, Dr. Mireles diagnosed G.J.G. with encephalopathy and developmental delay and recommended that he undergo a neuropsychological evaluation and an MRI of his brain prior to the upcoming school year. According to Dr. Mireles, Mother's attorney sent a cease-and-desist letter to Dr. Mireles,[18] and Mother also called Dr. Mireles's office "to say that she did not want the testing that was recommended." Dr. Mireles testified that G.J.G. needs neuropsychological testing and that his present circumstances, if unchanged, will significantly impair his physical health or emotional development.

On September 16, 2015, Dr. Schorlemer referred G.J.G. to Dr. Linda Pottinger for a neuropsychological evaluation. Two months later, Dr. Schorlemer also referred G.J.G. to the Texas Scottish Rite Hospital for Children for an evaluation with diagnosis of "ADD/ADHD [with] cognitive learning deficiency." As described previously, Dr. Schorlemer avers that Mother expressed no intent to take any action in response to his recommendations.

---

[18] A copy of this letter is attached to Dr. Schorlemer's affidavit. The letter states that Father had not previously notified Mother of the procedures recommended by Dr. Mireles.

In the spring of 2016, Mother filed an application for temporary restraining order, in which she requested that the court restrain Father from taking the children to any medical provider. Father avers that the court denied the TRO and ordered the parties to have G.J.G. evaluated by Scottish Rite Hospital, as Dr. Schorlemer had recommended. However, Mother instead took G.J.G. for an electroencephalogram (EEG) at Pediatric Neurology Associates. In his report, Dr. Kazi Majeed noted that G.J.G. had a "normal EEG" but that this "does not rule out epilepsy." According to Father, Mother has taken no action to obtain further medical treatment for G.J.G. so that epilepsy may be ruled out.

### b. Mother's objections to Father's evidence

Mother challenges the foregoing evidence on the ground that it is conclusory. For example, while Dr. Schorlemer examined G.J.G., consulted with the child's parents, and reviewed G.J.G.'s past medical records, his affidavit does not disclose the facts learned from these sources that led him to recommend in January 2015 that G.J.G. be evaluated and treated for a learning disorder and ADHD. However, Dr. Schorlemer's affidavit does attach and discuss Dr. Mireles's medical records. These records, dated June 2015, reflect a diagnosis of encephalopathy and developmental delay. The affidavit also attaches and discusses G.J.G.'s school records, dated April 2017. These records show that G.J.G., at the time a third-grader, was reading at a mid-first-grade level. We conclude that these facts are sufficient to render Dr. Schorlemer's averments regarding non-conclusory.

In addition, Mother complains that (i) Dr. Mireles's testimony does not state her medical diagnosis of G.J.G.'s condition, and (ii) her medical records (which diagnose G.J.G. has having encephalopathy and developmental delay) are conclusory. We disagree that Dr. Mireles's diagnosis lacked underlying facts. In her June 11, 2015 appointment with G.J.G., Dr. Mireles had the boy read for her to assess his reading ability. She testified that G.J.G. "tried hard" but became

"frustrated" because the task was "difficult for him" and was "not his level for his age." In Dr. Mireles's opinion, G.J.G. was "behind" and "[t]hat was a concern." In light of these facts, we conclude that Dr. Mireles's testimony and records are not conclusory.

Mother's summary-judgment motion and appeal brief additionally contend that Dr. Mireles's testimony is not based on her personal knowledge, as evidenced by Dr. Mireles's concession at the temporary orders hearing that she does not know what Mother has done to address G.J.G.'s reading difficulties, nor has Dr. Mireles reviewed the records of any doctors whom Mother took the children to see. However, Dr. Mireles's diagnosis and recommendations were based in part on her own observations regarding G.J.G. These observations provided Dr. Mireles with personal knowledge regarding G.J.G.'s medical condition.

With regard to Dr. Schorlemer's referral of G. J.G. to Scottish Rite Hospital, Mother points to Father's acknowledgement in his March 2017 deposition that G.J.G. was participating in a Scottish Rite program offered through his school district and that this program was appropriate for G.J.G. She also cites the testimony of the principal at the children's school, Ben Benavides, that the school district contracts diagnosticians to evaluate children for a reading disability. According to Benavides, G.J.G. had undergone such an evaluation, which led to his current placement at school. While the foregoing evidence suggests that G.J.G. is receiving treatment for his reading deficiency, we conclude that genuine issues of material fact nonetheless remain as to whether such treatment has fully remedied the deficiency, and whether the evaluations recommended by Drs. Schorlemer and Mireles are still necessary.

### 3. G.J.G.'s educational challenges

#### a. Father's evidence

Father's summary-judgment response included an affidavit from Debra Liva, a special educational advocate. Liva's affidavit describes her specialized knowledge and training to serve

as a non-attorney representative of children with disabilities and their parents in special education matters. In the absence of an objection by Mother, we will consider Liva to be an expert witness.

According to Liva's affidavit, she learned that a "Determination of Dyslexia" was made with respect to G.J.G. in May of 2016. Based on her initial review of the medical records provided by Father, Liva recommended that G.J.G. undergo an evaluation by Dr. Carla Proctor "to determine the extent of his needs, due to various discrepancies in his scores, and to ensure an appropriate program is in place due to the late finding of dyslexia." According to Liva, Dr. Proctor was unable to complete her testing "due to G.J.G.'s frustration and at the insistence of [Mother] that Dr. Proctor not complete the evaluation."

On May 4, 2017, Liva attended G.J.G.'s annual Admission, Review, and Dismissal (ARD) meeting[19] with Plano Independent School District. Prior to the meeting, Father informed Liva that Plano ISD had indicated a willingness to consider Drs. Schorlemer's and Mireles's diagnoses. However, Mother objected to this proposed course of action. It was noted during the meeting that G.J.G., who at the time was completing his third grade year, had an above average IQ but was reading at a first-grade level. In addition, the school district again stated that it would consider the foregoing diagnoses if Mother would agree. The district also explained that a parent has a right to an Independent Educational Evaluation (IEE)[20] following a school district's Full Individual Evaluation (FIE) of the student. According to Liva, based on Mother's objection, the district did not consider the foregoing diagnoses,[21] nor did it undertake an IEE with respect to G.J.G. Liva does not agree that G.J.G.'s academics are appropriately being addressed. In Liva's opinion,

---

[19] *See* TEX. EDUC. CODE ANN. § 29.301(1) (defining "[a]dmission, review, and dismissal committee" as "the committee required by State Board of Education rules to develop the individualized education program required by the Individuals with Disabilities Education Act (20 U.S.C. Section 1400 et seq.) for any student needing special education").

[20] The purpose of an lEE is to ensure that the school district is fully satisfying its obligation to provide an adequate program of special education for the child. Liva avers that, in G.J.G's case, "it was explained to [Mother] that she could avail herself of [G.J.G.'s[ right to have an lEE performed at PISD's expense."

[21] Plano ISD records attached to Liva's affidavit state that, in Mother's view, there is no basis for the diagnosis of encephalopathy and ADHD.

Mother's "refusal to allow the district to consider all known medical and psychological diagnoses . . . places [G.J.G.'s] health and emotional well-being in danger," and her "refusal to allow [G.J.G.] to be further evaluated" may endanger the child's physical health and/or significantly impair his academic and emotional development.

### b. Mother's objections to Father's evidence

Mother objects that Liva's affidavit does not show that she has personal knowledge with respect certain of the averments contained therein. Namely, with regard to the averment that Dr. Proctor was unable to complete her evaluation due to Mother's refusal, the affidavit does not show that Liva was privy to Mother's alleged conversation with Dr. Proctor or that Liva learned this information from Dr. Proctor. Moreover, with respect to the averment that Father informed Liva of Mother's refusal to permit Plano ISD to consider the diagnoses provided by Drs. Mireles and Schorlemer, the affidavit does not show that either Liva or Father were privy to Mother's alleged conversation with the school district. The foregoing objections are to purported defects of form and were waived by Mother's failure to object and obtain a ruling in the trial court. *See Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 697 (Tex. App.—Dallas 2008, no pet.) (noting that an objection that an affidavit is not based on personal knowledge or contains hearsay is an objection to a defect in the form of the affidavit*); Bradley v. Mid-Century Ins. Co.,* No. 05-05-00856-CV, 2006 WL 1545324, at *1 (Tex. App.—Dallas June 7, 2006, no pet.) (mem. op.) (concluding that "failure of an affidavit to show the affiant had personal knowledge is a defect in form and must be preserved in the trial court." (footnote omitted).[22] Moreover, as an expert witness, Liva was not required to have personal knowledge of the matters about which she testified. *Arthur*

---

[22] We have recognized that "'if an affidavit on its face establishes the *lack* of personal knowledge, this would constitute a defect in substance.'" *Diaz v. D.R. Wright Enters., Inc*., No. 05-17-00172-CV, 2018 WL 3484227, at *2 & n.2 (Tex. App.—Dallas July 19, 2018, no pet.) (mem. op.) (quoting *Bradley*, 2006 WL 1545324, at *1 n.1, and citing *Old Republic Ins. Co. v. Cross*, No. 05-14-01204-CV, 2015 WL 8014402, at *2 (Tex. App.—Dallas Dec. 7, 2015, no pet.) (mem. op.). Here, Mother objects to Liva's affidavit because it does not show how Liva had personal knowledge of the information in question, not that the affidavit, on its face, establishes a lack of personal knowledge.

*J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 706 (Tex. App.—Dallas 2008, no pet.) (citing TEX. RS. EVID. 602, 703).

Mother also objects to Liva's affidavit as conclusory. *See Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013) ("A conclusory statement of an expert witness is insufficient to create a question of fact to defeat summary judgment.") (citation and internal quotation marks omitted); *Paragon Gen. Contractors*, 227 S.W.3d at 883. Specifically, Mother objects to the statement that Plano ISD "expressed a willingness to consider necessary information and diagnoses," but that Mother "demand[ed]" that the district "not consider critical health-related information shared by [Father]." She also objects to the affidavit's reference to "[Mother's] refusal to allow [G.J.G.] to be further evaluated." She contends that the foregoing testimony does not specify the "information" or "refusal" to which Liva is referring. We disagree with these contentions. Read in totality, the affidavit makes clear that Drs. Schorlemer's and Mireles's diagnoses are the "information" in question, and the test attempted by Dr. Proctor was the "evaluat[ion]" to which Mother "refused."

Nor do we agree with Mother's argument that the affidavit fails to explain why and how Mother's refusal would endanger G.J.J. To the contrary, Liva avers that "depriving [G.J.G.] of the appropriate special education services will, in all likelihood, cause [G.J.G.] frustration and low self-esteem, lack of motivation, and/or behavior problems, and/or a complete shut-down and depression." In Liva's opinion, "a path that leads to difficulties in motivation and potential 'drop-out' is considered to significantly impair a student's emotional development and general well-being." We conclude that this explanation is sufficient to render Liva's opinion non-conclusory.

Mother also objects that the affidavit fails to explain what the district would have done differently with regard to G.J.G.'s educational needs if it had considered Drs. Mireles's and Schorlemer's analyses. We disagree that Liva was required, or even permitted, to offer such

speculative testimony. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) ("Opinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact more probable or less probable." (citing TEX. R. EVID. 401) (internal quotation marks omitted)).

Finally, Mother notes that the minutes of the May 2017 ARD meeting attached to Liva's affidavit reflect that the ARD committee, whose members include Father and Liva, "mutually agreed to implement the services reflected in these proceedings." We conclude that this evidence, at most, raises a genuine issue of material fact as to whether G.J.G.'s educational challenges are appropriately being addressed.

* * *

We conclude that the evidence submitted by Father in opposition to Mother's motion for summary judgment raised genuine issues of material fact regarding the existence of a material and substantial change with respect to B.N.G.'s and G.J.G.'s circumstances. Accordingly, the trial court erred in rendering summary judgment for Mother.

### E.    Attorney's Fees

Father's second issue urges that Mother's award of attorney's fees should be reversed and remanded because such award was embedded in the erroneous summary-judgment order. The award of attorney's fees in a suit affecting the parent-child relationship is within the trial court's discretion. *See* TEX. FAM. CODE ANN. § 106.002; *In re B.J.W.*, No. 05-17-00253-CV, 2018 WL 3322882, at *1 (Tex. App.—Dallas July 6, 2018, no pet.) (mem. op.) ("Section 106.002 of the family code invests a trial court with general discretion to award reasonable attorney's fees in all suits affecting the parent-child relationship, including modification suits."). We agree with Father that the district court should be given an opportunity to reconsider the award of attorney's fees

when it renders a new judgment. *See Bruni v. Bruni*, 924 S.W.2d 366, 368–69 (Tex. 1996); *In re M.D.C.*, 171 S.W.3d 361, 364 (Tex. App.—Dallas 2005, no pet.).

### III.
### Conclusion

Although "Texas law imposes significant hurdles before a conservatorship order may be modified," *In re H.N.T.*, 367 S.W.3d at 904, in the posture of this appeal genuine issues of material fact preclude the rendition of summary judgment for Mother, *see* TEX. R. CIV. P. 166a(c). Accordingly, we reverse the district court's judgment and remand this case for trial.

/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE

180091F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF B.N.G. AND G.J.G., MINOR CHILDREN

On Appeal from the 401st Judicial District Court, Collin County, Texas
Trial Court Cause No. 401-56335-2014.
Opinion delivered by Justice Pedersen, III. Justices Whitehill and Partida-Kipness participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for trial.

It is **ORDERED** that appellant NASH GONZALES recover his costs of this appeal from appellee MARISSA MAGGIO.

Judgment entered this 8th day of August, 2019.