**AFFIRM in part, REVERSE and REMAND in part; Opinion Filed February 10, 2014.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-11-01537-CV

### LAWYERS TITLE COMPANY, Appellant

### V.

### J.G. COOPER DEVELOPMENT, INC., Appellee

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 10-02917**

# OPINION

Before Justices Lang-Miers, Fillmore, and Brown[1]
Opinion by Justice Brown

Lawyers Title Company appeals the summary judgment granted in favor of J.G. Cooper Development, Inc. and the denial of its own cross-motion for summary judgment. We reverse the trial court's judgment insofar as it grants summary judgment for J.G. Cooper Development, Inc. on its claims of conversion, bailment, and money had and received; we remand those claims for further proceedings. In all other respects, we affirm the trial court's judgment.

## BACKGROUND

J.G. Cooper Development, Inc. is a real estate investment and development company owned by Gary Cooper, who is the sole shareholder, officer, and director of the corporation.[2]

---

[1] The Honorable Mary L. Murphy, Retired Justice, was a member of the panel at the time this case was submitted, but due to her resignation from this Court on June 7, 2013, she did not participate in deciding this case. She was replaced on the panel by Justice Ada E. Brown in accordance with the appellate rules. *See* TEX. R. APP. P. 41.1(a).

Cooper's primary business is real estate investing. In April 2009, Ty Howerton approached Cooper regarding a transaction involving the purchase of real property at 515 Houston Street in Fort Worth, Texas (the "Houston Street Property"). Howerton and Cooper were business associates and previously had done some real estate transactions together. Howerton told Cooper that the Houston Street Property was a tax foreclosure, and Howerton knew an IRS agent through whom he and Cooper could purchase the property for approximately $3.6 million even though he estimated the property was worth between $5 and $6 million. Howerton advised Cooper that they needed to have $1.8 million in an escrow account so the sellers could see "there were funds available" and that Cooper and Howerton were serious buyers. Howerton further advised Cooper that they had to use appellant Lawyers Title, a title insurance company formerly known as LandAmerica American Title Company, because the IRS had dealt with that company in the past.

Howerton sent Cooper an e-mail reiterating the terms of the deal; he also forwarded an e-mail from Jason Chumley with attached wire instructions and an escrow agreement. Gary Cooper testified that Chumley identified himself as a "Closer" and "Escrow Agent" for Lawyers Title. In fact, Chumley was an independent contractor working for Phillip Michael Hawk, Jr., a fee attorney for Lawyers Title. The written agreement by which Hawk worked for Lawyers Title specified that Hawk had an attorney-client relationship with Lawyers Title, but he was not an agent of Lawyers Title except for the limited purpose of closing real estate transactions.

Cooper, Howerton, and Chumley executed the escrow agreement on April 24, 2009. Chumley purported to sign for Lawyers Title. The escrow agreement anticipates "Buyer entering into a contract with Escrow Agent establishing an escrow agreement to convey Buyer's intention and ability to purchase the [Houston Street Property]." Although the escrow agreement is not

---

[2] Unless noted otherwise, "Cooper" will refer to both Gary Cooper and J.G. Cooper Development, Inc.

entirely clear, "Buyer" appears to refer to Cooper and Southwest Rain-Maker, Inc., a company associated with Howerton. The "Escrow Agent" appears to refer to Lawyers Title and Chumley. The "Escrow Agent" acknowledged receipt of $1.8 million and agreed to "hold the same in escrow only in accordance with the terms of this Agreement." The "Escrow Agent" was required by the escrow agreement to hold the $1.8 million in escrow "until such time that a contract is issued for the referenced property or at such place and time when [Cooper] may designate in writing the cancelation of this agreement."

Cooper and Howerton came to a separate agreement concerning the escrow funds. Cooper would deposit the entire $1.8 million in the escrow account. In return, Howerton would pay Cooper $6,300 per week. Cooper agreed to credit these payments back to Howerton once the contract for the Houston Street Property was finalized. Cooper wired the $1.8 million to an escrow account in accordance with the wire-transfer instructions and e-mail correspondence.

The $1.8 million, however, was never used to pay for the Houston Street Property, and no real estate purchase contract was drafted or signed related to that property. Instead, Chumley, Howerton, and one of Howerton's associates, Rick Payne, used the funds on a separate real estate transaction for property located at 3207 McKinney Avenue in Dallas, Texas (the "McKinney Property"). Specifically, approximately $1.7 million was transferred from the escrow account to Lochlan Steele, Inc., a company affiliated with Payne, as a payoff of four liens on the McKinney Property. Chumley, Howerton, and Payne were indicted on federal wire fraud charges based in part on this transaction.[3]

Cooper's relationship with the McKinney Property transaction is disputed by the parties. Lawyers Title argues that the wiring instructions provided by Chumley for the $1.8 million

---

[3] Lawyers Title offered the federal indictment against Chumley as summary-judgment evidence. Cooper objected to and moved to strike the indictment arguing it had not been properly authenticated and constituted hearsay. The trial court sustained the objection. There was other evidence in the record, however, of the indictment. For example, Cooper admitted in his deposition that he was named as a victim of a criminal scheme in Chumley's indictment.

contained the "guaranty file number" for the McKinney Property transaction, and the file for the McKinney Property transaction contained what Lawyers Title contends were closing instructions from Cooper on the McKinney Property.[4] Cooper acknowledges it received a $1.2 million deed of trust on the McKinney Property, but this deed was recorded twenty-seven days before Cooper wired the $1.8 million to Lawyers Title, and "Lawyers Title admitted that the Deed of Trust would not have been recorded unless it had already received the $1.2 million (separate from the $1.8 million) prior to" the date the deed was recorded. Thus, Cooper argues it received nothing of value in return for the $1.8 million deposit. Cooper also argues that at no time did it ever authorize the removal of the $1.8 million from the escrow account, and its authorization was a condition precedent for the removal of the funds.

Cooper filed suit against numerous parties, including Howerton, Rain-Maker, Payne, Chumley, Hawk, and Lawyers Title. It brought multiple claims against Lawyers Title, including breach of contract, breach of fiduciary duty, conversion, negligence, breach of bailment agreement, fraud, vicarious liability, money had and received, and unjust enrichment. The parties filed cross-motions for summary judgment. The trial court denied Lawyers Title's motion and granted summary judgment on Cooper's claims against Lawyers Title for bailment, conversion, and money had and received; it awarded Cooper $1.8 million in damages against Lawyers Title. The trial court then severed those claims from the remainder of the suit, and this appeal followed.

---

[4] Lawyers Title first made this argument in its motion for new trial; it did not raise this issue in its response to Cooper's motion for summary judgment.

## DISCUSSION

In three issues, Lawyers Title argues the trial court erred in (1) partially granting Cooper's motion for summary judgment and denying Lawyers Title's own motion for summary judgment; (2) granting summary judgment on damages and awarding full, undiminished damages without credits or apportionment; and (3) denying Lawyers Title's motion for new trial and motions for leave to supplement the trial court record with new and unforeseeable evidence that would have resulted in a different outcome.

### Standard of Review

We review the trial court's summary judgment de novo. *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009). When both parties move for summary judgment and the trial court grants one and denies the other, we will review the summary-judgment evidence presented by both parties, consider all questions presented, and render the judgment that the trial court should have rendered. *Id.*; *Dallas Cent. Appraisal Dist. v. Mission Aire IV, L.P.*, 279 S.W.3d 471, 473–74 (Tex. App.—Dallas 2009, pet. denied).

To defeat a plaintiff's cause of action on a traditional motion for summary judgment, a defendant must either conclusively negate an element of the plaintiff's claim or plead and conclusively establish each essential element of an affirmative defense. *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 776 (Tex. App.—Dallas 2005, pet. denied). A matter is conclusively established for summary-judgment purposes if ordinary minds cannot differ on the conclusion to be drawn from the evidence. *AN Collision Ctr. of Addison, Inc. v. Town of Addison*, 310 S.W.3d 191, 193 (Tex. App.—Dallas 2010, no pet.). To win summary judgment on its own cause of action, a plaintiff must establish each essential element of its claim as a matter of law. *Dallas Cent. Appraisal Dist.*, 279 S.W.3d at 474. In our review, we take as true

evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

Our appellate review of the summary judgment is limited to those issues presented to the trial court. *See* TEX. R. CIV. P. 166a(c) (stating issues not expressly presented to trial court in writing shall not be considered on appeal as grounds for reversal); *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993) (holding summary judgment cannot be affirmed on grounds not expressly set out in motion or response). When, as here, the trial court's orders granting summary judgment do not specify the basis for the ruling, we will affirm the judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

## Analysis

In its first issue, Lawyers Title argues the trial court erred (a) in granting summary judgment on Cooper's claims for conversion, bailment, and money had and received, and (b) in denying Lawyers Title's motion for summary judgment on those same three claims. Lawyers Title contends it disproved one or more elements of each of Cooper's claims or—at a minimum—it raised genuine issues of material fact on all three claims. We will address the three claims in turn.

### *Conversion*

Conversion is the "'unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights.'" *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 699 (Tex. App.—Dallas 2012, no pet.) (quoting *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex.1971)). To establish a claim for conversion, a plaintiff must prove that (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant

–6–

unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Grand Champion Film Prod., L.L.C. v. Cinemark USA, Inc.*, 257 S.W.3d 478, 485 (Tex. App.—Dallas 2008, no pet.). The plaintiff also must establish it was injured by the conversion. *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147 (Tex.1994) (per curiam); *RPK Capital*, 360 S.W.3d at 699. "[A]n action for conversion of money arises only where the money can be identified as a specific chattel, meaning it is '(1) delivered for safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper.'" *Entm't Merch. Tech., L.L.C. v. Houchin*, 720 F. Supp. 2d 792, 799 (N.D. Tex. 2010) (Texas law) (quoting *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007)); *see also Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App.—Dallas 1992, writ denied).

Cooper contends the summary-judgment evidence conclusively established that Lawyers Title converted its property. Specifically, Gary Cooper testified by affidavit that he initiated a wire transfer in the amount of $1.8 million to an escrow account at Compass Bank. Bank documents in the summary-judgment record identify that account as the "LandAmerica American Title Co. Escrow Account – North Lamar" account. The escrow account was in Lawyers Title's name under its federal taxpayer identification number, and a number of Lawyers Title employees were authorized signers on the account. Therefore, Cooper argues, the escrow account was owned by Lawyers Title as a matter of law and, when Cooper wired funds into that account, Lawyers Title "received and accepted Cooper's deposit, and recorded that deposit on its internal 'Receipts and Disbursements Ledger.'" Cooper also maintains the summary-judgment evidence established that Lawyers Title wrongfully exercised dominion and control over its

–7–

funds by transferring the funds to third parties without its authorization. *See Pierson v. GFH Fin. Servs. Corp.*, 829 S.W.2d 311, 314 (Tex. App.—Austin 1992, no writ) (active interference with an owner's right of property or control as to deprive him of its free use and enjoyment constitutes an act of conversion); *Hofland v. Elgin-Butler Brick Co.*, 834 S.W.2d 409, 412 (Tex. App.—Corpus Christi 1992, no writ) (sale of property to third party constituted conversion). Cooper claims that approximately $1.7 million of its funds in the escrow account were transferred to Lochlan Steele without its authorization, and this transfer was authorized by Hawk and Angie Salazar, an escrow agent in Hawk's office. It also claims that Sarah Barker, an employee of Lawyers Title, is noted as the person who "made the entry for the wire-transfer to Lochlan Steele."

The summary-judgment evidence includes a copy of the Closing Services Agreement between Hawk and Lawyers Title. The agreement authorized Hawk to "close real estate transactions representing" Lawyers Title and to charge appropriate fees for such services. The agreement also required Hawk to "maintain a separate escrow account . . . with a bank or banks approved by the Company, for the sole purpose of closing real estate transactions for" Lawyers Title. The account was required to be styled "LandAmerica American Title Company Escrow Account." It is undisputed Cooper's funds were wired into this escrow account. Hawk filed an affidavit stating that under the Closing Services Agreement, he "was not an employee of Lawyers Title, nor an agent of Lawyers Title for any purpose other than the limited purposes set forth in the [agreement] – to close title insurance transactions." He acknowledged that he was required to maintain a separate escrow account at Compass Bank, and he "was responsible for ensuring that funds were wired out of the Escrow Account properly."

The summary-judgment evidence also contained the deposition of Merritt Hopson, the senior vice president of the holding company that owns Lawyers Title. When asked what

–8–

controls were in place to make sure that funds in the escrow account were disbursed correctly, Hopson responded that, "[t]he verification or the controls . . . rests on the escrow officer and in this case the fee attorney, Hawk's office." When Cooper's trial attorney described the escrow account as "Lawyers Title's escrow account that was assigned to Hawk's fee attorney office," Hopson countered, "I don't think []by agreement or otherwise it's Lawyers Title - - Lawyers Title escrow account. I think it's Hawk's escrow account that we approved." When asked by Cooper's attorney to elaborate, he testified that the agreement between Hawk and Lawyers Title required the attorney—in this case, Hawk—to maintain an escrow account; the account "may be balanced and reconciled by Lawyers Title Company, but it is Hawk's account that we approved for him to use." Hopson described Hawk's access to the account as "exclusive." Cooper, however, relies upon evidence indicating Hawk's office did not receive or have access to the bank statements for the account. Hopson testified that Hawk's office did not receive the bank statements for the escrow account because Lawyers Title is required by the Texas Department of Insurance to perform reconciliations "to balance the cash on hand to the bank statement to what the escrow accounts show." Hopson also testified that "the [escrow] account belongs in this instance to the fee attorney, so if the fee attorney took the money in and manages the account, the fee attorney would be responsible for wiring it out or sending a check out or however they disbursed it if they disbursed it." Regarding the entry for the wire-transfer to Lochlan Steele made by Barker, Hopson stated that Barker did not authorize the transaction, that her entry was simply "cleanup, that she works in the accounting department . . . [a]nd this file had a blank where the person's name should have been, and she filled in as a curative matter as a favor to the Hawk office." When asked by Cooper's trial attorney whether Lawyers Title was holding the money as a fiduciary for others, Hopson replied, "I think Michael Hawk is holding the money, not Lawyers Title." Hopson also stated that Hawk's office controlled the escrow account

–9–

pursuant to their service agreement. Cooper's trial attorney countered that specific employees of Lawyers Title had authority to sign on the account, and Hopson replied, "they didn't receive or disburse any of the funds. This was done by Hawk's office." When asked if part of Hawk's job as the agent of Lawyers Title is to receive money and to make disbursements, Hopson responded, "[n]ot on our behalf. I have to disagree with that. He is authorized to issue title insurance for Lawyers Title."

We conclude that this summary-judgment evidence raises a genuine issue of material fact regarding whether Lawyers Title exercised control of both the escrow account and the $1.8 million that Cooper wired into the account. To prevail on summary judgment, Cooper was required to prove that Lawyers Title unlawfully and without authorization assumed and exercised control over its property to the exclusion of, or inconsistent with, its right as an owner. *See RPK Capital*, 360 S.W.3d at 699. And for Lawyers Title to prevail on its motion, it was required to prove it had *not* assumed and exercised such control over Cooper's property. Because a fact issue exists on this issue, neither party was entitled to summary judgment on Cooper's conversion claim.

## *Bailment*

Cooper argues that Lawyers Title was a bailee and breached its obligation to protect Cooper's money. To create a bailment, there must be (1) delivery of personal property from one person, the bailor, to another, the bailee, for a specific purpose; (2) acceptance of delivery by the bailee; (3) an express or implied contract between the parties that the specific purpose will be realized; and (4) an agreement between the parties that the property will be either returned to the bailor or dealt with according to the bailor's direction. *State v. $281,420.00 in United States Currency*, 312 S.W.3d 547, 551 (Tex. 2010); *Cessna Aircraft Co. v. Aircraft Network, LLC*, 213 S.W.3d 455, 462–63 (Tex. App.—Dallas 2006, pet. denied). To establish a bailment

−10−

relationship, the evidence must demonstrate that the entity sought to be charged as bailee knew that it was assuming such relationship and responsibilities before it will be charged with the duties of bailee. *DeLaney v. Assured Self Storage*, 272 S.W.3d 837, 839 (Tex. App.—Dallas 2008, no pet.); *Hoye v. Like*, 958 S.W.2d 234, 237 (Tex. App.—Amarillo 1997, no pet.).

Cooper argues the competent summary-judgment evidence presented to the trial court in this case establishes that it delivered the funds to Lawyers Title to hold in trust; Lawyers Title accepted the funds; an express or implied agreement existed between Cooper and Lawyers Title that the funds would be held and not distributed without Cooper's permission; and there was an understanding that the funds would either be returned to Cooper, used in connection with the purchase of the Houston Street Property, or monitored and not released without proper documentation.

Given the genuine issues of material fact discussed above regarding Lawyers Title's control over the escrow account and Cooper's $1.8 million, we conclude that summary judgment also was improper—for both parties—on Cooper's bailment claim. Specifically, because a fact issue exists regarding whether Lawyers Title controlled the escrow account, similar fact questions must exist regarding whether Cooper delivered the $1.8 million to Lawyers Title when it wired the money to the escrow account and whether Lawyers Title accepted those funds.

### *Money Had and Received*

Cooper argues the summary-judgment evidence conclusively established that Lawyers Title had and received money that belonged to him. A claim for money had and received seeks equitable relief. *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 203 n.1 (Tex. 2007) (per curiam); *Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 836 (Tex. App.—Dallas 2008, pet. denied). The claim "'belongs conceptually to the doctrine of unjust enrichment.'" *Edwards*, 252 S.W.3d at 837 (quoting *Amoco Prod. Co. v. Smith*, 946 S.W.2d

–11–

162, 164 (Tex. App.—El Paso 1997, no writ)). To prove the claim, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him. *Id.* A cause of action for money had and received is "'less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which . . . belongs to the plaintiff.'" *Id.* (quoting *Staats v. Miller*, 243 S.W.2d 686, 687–88 (Tex. 1951)). A cause of action for money had and received is not premised on wrongdoing. *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.). In defending against such a claim, a defendant may present any facts and raise any defenses that would deny a claimant's right under this theory. *Id.* at 814.

Cooper argues there is no dispute that Lawyers Title received $1.8 million from Cooper. It contends it is also undisputed that Lawyers Title had no claim of ownership over the $1.8 million held in escrow, Cooper received nothing of value in return for the $1.8 million, and none of the $1.8 million was returned to Cooper. It maintains that because it presented competent summary-judgment evidence "conclusively establishing that Lawyers Title received money which rightfully belonged to Cooper," the trial court properly granted summary judgment on its claim of money had and received.

We disagree with Cooper's assertion that there is no dispute regarding whether Lawyers Title received the $1.8 million from Cooper. To the contrary, we have concluded that genuine issues of material fact exist regarding which entity or individuals exercised control over the escrow account into which Cooper wired its funds. We conclude that such issues render Cooper's claim of money had and received improper for summary judgment for both parties.

## CONCLUSION

We conclude that genuine issues of material fact exist precluding summary judgment on Cooper's claims of conversion, bailment, and money had and received, and the trial court erred in granting summary judgment for Cooper on those claims. Based on the same issues of material fact, we conclude the trial court did not err in denying Lawyers Title's motion for summary judgment on those three claims. Given this disposition, we do not address Lawyers Title's remaining issues in which it argues the trial court erred in granting summary judgment on damages and erred in denying Lawyer Title's motion for new trial and motions for leave to supplement the record with new and unforeseeable evidence that would purportedly have resulted in a different outcome. *See* TEX. R. APP. P. 47.1. We reverse the trial court's judgment insofar as it grants summary judgment for Cooper on its claims of conversion, bailment, and money had and received; we remand those claims for further proceedings. In all other respects, we affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

111537F.P05

-13-



# Court of Appeals
## Fifth District of Texas at Dallas

## **JUDGMENT**

LAWYERS TITLE COMPANY, Appellant

No. 05-11-01537-CV     V.

J.G. COOPER DEVELOPMENT, INC.,
Appellee

On Appeal from the 193rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 10-02917.
Opinion delivered by Justice Brown.
Justices Lang-Miers and Fillmore
participating.

In accordance with this Court's opinion of this date, the portion of the trial court's August 15, 2011 judgment granting appellee J.G. Cooper Development, Inc.'s Motion for Summary Judgment on appellee's claims of conversion, bailment, and money had and received is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings. In all other respects, the trial court's judgment is **AFFIRMED**. It is **ORDERED** that appellant Lawyers Title Company recover its costs of this appeal from appellee J.G. Cooper Development, Inc.

Judgment entered this 10th day of February, 2014.

/Ada Brown/
ADA BROWN
JUSTICE

-14-