**AFFIRMED and Opinion Filed August 7, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-01295-CV

**CAMILLE COOPER, ROBERT NEVAREZ, THE ORSALO GROUP, LLC, LARRY COOK, AND 5TH AVENUE ACQUISITIONS & VENTURE CAPITALISTS, LLC, Appellants**

**V.**

**TCH ALTERA AHCC, LLC, Appellee**

**On Appeal from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-06464-2018**

## MEMORANDUM OPINION

Before Justices Reichek, Goldstein, and Garcia
Opinion by Justice Garcia

After appellee TCH Altera AHCC, LLC ("Altera") obtained a loan for the building of a convention center in Allen, Texas, appellants demanded that Altera pay them a broker's fee. Altera sued appellants for declaratory judgment, and appellants counterclaimed for the fee. Altera prevailed on summary judgment, and appellants appealed. We affirm.

## I.  BACKGROUND

### A.  Factual Allegations

We draw these factual allegations from the parties' live pleadings unless otherwise indicated.

#### 1.  The Parties and Others Involved in the Controversy

Altera alleged that it is a Dallas-based Texas limited liability company in the business of real-estate development and management.

Appellants alleged that appellants 5th Avenue Acquisitions & Venture Capitalists, LLC and The Orsalo Group, LLC are commercial loan and finance brokers. Appellant Larry Cook is 5th Avenue's principal. Appellants Camille Cooper and Robert Nevarez are Orsalo's principals.

Two other participants in the underlying events should be mentioned. One is Dipika Patel, who allegedly engaged in conversations with 5th Avenue and Orsalo about obtaining funding for construction projects in Texas. Altera alleged that Patel engaged in these conversations without Altera's authorization. Appellants, on the other hand, claim that Patel acted with Altera's actual or apparent authority.

The other participant is Terry Quinn. According to Quinn's summary-judgment affidavit, he is the CEO of Altera Development Company, LLC, which in turn is a member of appellee Altera. Appellants alleged that Quinn dealt directly with appellant Cooper in the course of the events underlying this lawsuit. Appellants

also adduced evidence that Quinn is a principal in a company called Avison Young that ultimately received a broker's fee on the loan at the center of this dispute.

### 2. Altera's Allegations

Altera alleged the following facts.

In 2015, Altera planned to develop a hotel, parking garage, and convention center in Allen, Texas, and it sought financing for this "Allen Project." Dipika Patel proposed to become involved in the Allen Project through a company called Hayden Holdings, LLC. Unbeknownst to Altera, Patel began having conversations about funding the Allen Project with appellants Orsalo and 5th Avenue. In early 2016, Hayden Holdings and 5th Avenue executed a financial-consulting agreement and an addendum that together provided for a 1% fee on the total funding amount if Hayden Holdings secured financing for the Allen Project due to 5th Avenue's efforts. But the agreement and the addendum did not mention Altera and were not executed by Altera.

Later, appellant Cooper submitted a funding package about the Allen Project to Texas State Bank. Altera found out about this submission through its own contacts at the bank, and it then contacted Cooper and learned about Patel's involvement with 5th Avenue and Orsalo. Cooper did not mention the agreement and addendum. Altera did not authorize Orsalo to continue submitting financial packets to lenders, nor did Altera enter a written agreement with Orsalo. Nevertheless, and without

Altera's knowledge, in May 2016 Orsalo submitted a financing package to IBC Bank on Altera's behalf. IBC Bank never considered this submission.

In or around April 2017, Altera secured funding from IBC Bank through Altera's own separate and substantially different package.

In July 2017, appellants sent Altera a demand letter for a $910,000 fee based on the agreement and addendum. Altera denied that it owed any fee.

### 3.    Appellants' Allegations

Appellants alleged the following facts in support of their counterclaims.

In January 2016, appellant Cook met with Dipika Patel and with "Kerry R. Burden of Altera Development" about the Allen Project. 5th Avenue and Hayden Holdings executed a financial-consulting agreement in February 2016 and an addendum to that agreement in March 2016.

Appellant Cooper submitted a funding package about the Allen Project to Texas Capital Bank, and in May 2016 Terry Quinn contacted Cooper to inquire how she was involved. Cooper said she was working with 5th Avenue and Patel on the Allen Project, and Quinn thanked her and asked her for a copy of the funding package. He also sent Cooper additional information to use in future loan packages to funding institutions. Cooper in turn sent Quinn documents, some of which listed Patel "as a partner to Altera."

Also in May 2016, appellants sent a funding package to IBC Bank. Around this time, Cooper and Patel had "numerous communications" relating to potential

–4–

IBC Bank funding. In June 2016, Quinn told Cooper that he was concerned about Patel's professionalism and that he wanted to deal directly with Cooper from then on. Cooper, on behalf of Orsalo, and Quinn, on behalf of "Altera Development Company, LLC," signed a confidentiality agreement regarding the Allen Project.

In April 2017, Patel informed Cooper that ground had just been broken on hotel construction and that IBC Bank was the lender on the project.

## B.     Procedural History

In December 2018, Altera sued appellants for declaratory relief directed largely at establishing that Altera was not liable to appellants.

Appellants answered. In August 2019, they filed counterclaims against Altera on theories including breach of contract, tortious interference with contract, and fraud. In February 2022, appellants filed a third-party claim against Terry Quinn.

In April 2022, Altera and Quinn filed a joint motion for partial summary judgment that addressed most of the issues in the case. Appellants filed a summary-judgment response, and Altera filed a reply.

In May 2022, the trial judge severed out appellants' third-party claims against Quinn and maintained the then-current trial setting of June 6, 2022.

The trial did not go forward, and in August 2022 the trial judge signed an order that granted Altera's motion for partial summary judgment but did not award any specific declaratory relief.

In September 2022, Altera filed a summary-judgment motion on the issue of its attorneys' fees and costs. On November 15, 2022, the trial judge signed an order that granted Altera's motion and awarded Altera fees and costs.

Within thirty days after the trial judge signed the November 15 order, appellants filed a notice of appeal, and Altera filed a motion for entry of an amended final judgment.

On February 8, 2023, the trial judge signed a document entitled Amended Final Judgment. This judgment recites the specific declaratory relief awarded to Altera, contains the awards of attorneys' fees and costs, and includes finality language. We summarize the declaratory relief granted as follows:

- Altera is not a party to the agreement or the addendum executed by Hayden Holdings and 5th Avenue.

- The agreement and addendum are invalid and unenforceable against Altera.

- There is no "formal contract" between Altera and Orsalo or between Altera and 5th Avenue.

- Altera does not owe a fee to Cooper, Nevarez, Orsalo, Cook, or 5th Avenue.

## II.    SCOPE OF THIS APPEAL

Altera argues that the only ruling properly before this Court is the trial judge's award of attorneys' fees because appellants' notice of appeal recites that the judgment appealed from was signed on November 15, 2022. We disagree.

We review the relevant facts. On August 8, 2022, the trial judge signed an interlocutory summary-judgment order that granted Altera's first summary-

–6–

judgment motion. On November 15, 2022, she signed a summary-judgment order that awarded Altera its attorneys' fees. On December 5, 2022, appellants filed a notice of appeal reciting that the "judgment or order appealed from" was signed on November 15, 2022. *See* TEX. R. APP. P. 25.1(d)(2) (providing that notice of appeal must state the date of the appealed judgment or order). We questioned the finality of the judgment because the August 8 order did not state the specific declaratory relief being granted. And on February 8, 2023, the trial judge signed the amended final judgment from which this appeal has proceeded.

We conclude that appellants' notice of appeal suffices to bring the trial court's entire amended final judgment before us for consideration.

If the November 15 order did not constitute a final judgment because the August 8 order was too indefinite, then the February 8 amended final judgment was the only final judgment in the case, and appellants' notice of appeal was premature. *See* TEX. R. APP. P. 27.1(a). In this scenario, we must treat the notice of appeal as though it had been filed on February 8 after the amended final judgment was signed. *See id*. Rule 27.1(a) does not require an appellant to amend a premature notice of appeal to update the date of the judgment or order appealed from, and neither will we.

The outcome is the same if the November 15 order was actually a final judgment. In that case, the trial judge acted within her plenary power when she signed the amended final judgment on February 8, 2023, and we must treat

–7–

appellants' appeal as being from the amended final judgment. *See* TEX. R. APP. P. 27.3. We could require appellants to file an amended notice of appeal reciting the date of the amended final judgment, but, as in previous cases involving similar technicalities, we conclude that "nothing would be gained by this exercise." *Anderson v. Goodwin*, No. 05-23-00343-CV, 2024 WL 725669, at *2 (Tex. App.—Dallas Feb. 22, 2024, no pet.) (mem. op.). We therefore proceed to the merits of this appeal.

### III.   ISSUE PRESENTED AND SUMMARY-JUDGMENT GROUNDS

In a single issue with multiple subparts, appellants assert that the trial judge erred by granting summary judgment in Altera's favor.

Because this case involves several claims, counterclaims, and summary-judgment grounds, we summarize them briefly before beginning our analysis.

| Claims | Altera's Summary-Judgment Grounds |
|---|---|
| Declaratory judgment | Altera conclusively proved its entitlement to the declarations sought. |
| Breach of contract (counterclaim) | 1. No evidence of (i) a valid contract between Altera and any appellant, (ii) a breach by Altera, or (iii) injury to any appellant.<br><br>2. The evidence establishes that (i) Altera is not a party to the relevant contracts, (ii) the contracts are insufficient on their face to establish Altera's liability or appellants' damages, and (iii) appellants failed to establish a condition precedent to recovery. |

| | |
|---|---|
| Tortious interference with existing contract (counterclaim) | 1. Statute of limitations.<br><br>2. Except as to appellant 5th Avenue, there is no evidence of a contract. As to all appellants, there is no evidence of a willful or intentional act of interference, proximate cause, or actual damage or loss.<br><br>3. If Altera was a party to a contract, as a matter of law it could not interfere with that contract. |
| Fraudulent conveyance (counterclaim) | No evidence (i) of a debtor–creditor relationship between Altera and any appellant or (ii) that Altera incurred any obligation with intent to hinder, delay, or defraud any appellant. |
| Conversion (counterclaim) | 1. Statute of limitations.<br><br>2. Conversion will not lie for an ordinary monetary liability on these facts.<br><br>3. No evidence that (i) any appellant possessed a right to immediate possession of any specific personal property, (ii) Altera wrongfully exercised dominion or control over such property, or (iii) any appellant suffered damage as a result of Altera's actions. |
| Promissory estoppel (counterclaim) | 1. No evidence that (i) Altera made a promise to any appellant or (ii) any appellant substantially relied on a promise by Altera.<br><br>2. The evidence establishes that (i) Patel acted only as an agent of Hayden Holdings, (ii) Patel lacked authority to represent Altera, and (iii) Altera did not know about or approve any statements by Patel. |

| | |
|---|---|
| Money had and received (counterclaim) | 1. Statute of limitations.<br><br>2. No evidence that Altera holds money that in equity and good conscience belongs to appellants. |
| Common-law fraud (counterclaim) | 1. No evidence that (i) Altera made a material, false representation, (ii) Altera knew any representation it made was false, (iii) Altera intended to induce reliance by any appellant, or (iv) any appellant actually and justifiably relied on a representation by Altera.<br><br>2. The evidence established that (1) Patel signed the agreement and addendum only as Hayden Holdings' agent, (ii) Patel lacked authority to represent Altera, and (iii) Altera did not know about or approve any statements by Patel. |
| Statutory fraud (counterclaim) | (Appellants do not seek reversal of the judgment as to statutory fraud.) |
| Quantum meruit (counterclaim) | No evidence that (i) Altera accepted or used any of appellants' services, (ii) Altera was even aware of the services appellants were allegedly providing, or (iii) Altera was reasonably notified of appellants' expectation of being paid. |
| Constructive trust (counterclaim) | 1. A constructive trust is a remedy, not a cause of action.<br><br>2. Appellants have not pleaded a fiduciary relationship and have not proven fraud. |

## IV. STANDARD OF REVIEW

We review a summary judgment de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019).

When we review a traditional summary judgment in favor of a defendant, we determine whether the defendant conclusively disproved an element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Alexander v. Wilmington Sav. Fund Soc'y, FSB*, 555 S.W.3d 297, 299 (Tex. App.—Dallas 2018, no pet.). We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve every doubt in the nonmovant's favor. *Id*. A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Id*.

When we review a summary judgment in favor of a claimant, we determine whether the claimant established every element of its claim as a matter of law. We consider the evidence in the light most favorable to the nonmovant, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts against the movant. *Id*.

We review a no-evidence summary judgment under the same legal-sufficiency standard as a directed verdict. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). We consider the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable jury could and disregarding contrary evidence and inferences unless a reasonable jury could not. *Id*. The nonmovant bears the burden of producing evidence sufficient to raise a genuine issue of material fact as to each challenged element. *Id*. A no-evidence summary judgment is proper if (i) there is a complete absence of evidence

of a vital fact, (ii) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (iii) the evidence offered to prove a vital fact is no more than a scintilla, or (iv) the evidence conclusively establishes the opposite of a vital fact. *See id.*

## V. ANALYSIS

### A. Briefing Waiver

Altera argues that appellants have waived their appeal because they failed to brief any challenges to the declaratory relief Altera won in the trial court. Specifically, Altera argues (i) the declaratory relief is fatally inconsistent with all of appellants' counterclaims, (ii) appellants' failure to challenge the declaratory relief means we cannot reverse that part of the judgment, and thus (iii) we cannot reverse the judgment as to appellants' counterclaims either.

Although appellants did not file a reply brief, they contended at oral argument that their brief sufficiently challenges the grant of declaratory relief. Specifically, they contended that (i) the declaratory relief focuses on the absence of a contract between Altera and any of the appellants and (ii) appellants' brief argues that there is enough evidence of a contract to raise a genuine question of material fact. Altera responded that one declaration—that Altera does not owe a fee to any of the appellants—is broader than the contract-related declarations and is dispositive of all of appellants' counterclaims.

Because briefing waiver is disfavored, we will construe appellants' brief to also challenge the declaratory relief to the extent reasonably possible. *See Anderson v. Gilbert*, 897 S.W.2d 783, 784 (Tex. 1995) (per curiam) ("An appellate court should consider the parties' arguments supporting each point of error and not merely the wording of the points.").

**B.     Breach-of-Contract Counterclaims and Declaratory-Judgment Claim**

The trial judge granted both traditional and no-evidence summary judgment in Altera's favor on appellants' breach-of-contract counterclaims. The trial judge also granted declaratory relief that (i) Altera was not a party to the agreement or the addendum, (ii) the agreement and the addendum were invalid and unenforceable against Altera, (iii) there is no "formal contract" between Altera and either 5th Avenue or Orsalo, and (iv) Altera does not owe any fee to appellants on the Allen Project or on any other project.

**1.     Breach-of-Contract Counterclaims**

We affirm the summary judgment as to these counterclaims for two independent reasons.

First, we must affirm the judgment because appellants did not attack every summary-judgment ground on which it may have been based. In its summary-judgment motion, Altera raised multiple grounds attacking appellants' breach-of-contract counterclaims, including a ground that appellants could not show that a condition precedent—approval of appellants' fee by the City of Allen—had been

–13–

satisfied. Appellants do not address this condition-precedent argument in their appellate brief, so we must affirm the judgment on their breach-of-contract counterclaims. *See Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 226–27 (Tex. 2022); *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970).

Appellants' arguments also fail on the merits. The elements of breach of contract are (i) a valid contract existed between the plaintiff and the defendant, (ii) the plaintiff performed or tendered performance, (iii) the defendant breached the contract, and (iv) the plaintiff sustained damages as a result of the breach. *Gold's Gym Franchising LLC v. Brewer*, 400 S.W.3d 156, 162 (Tex. App.—Dallas 2013, no pet.). The elements of a valid contract are (i) an offer, (ii) an acceptance in strict compliance with its terms, (iii) a meeting of the minds as to the contract's subject matter and its essential terms, (iv) each party's consent to the terms, (v) intent that the contract be mutual and binding, and (vi) consideration. *Grisham v. Bird*, No. 05-19-00400-CV, 2020 WL 1502774, at *4 (Tex. App.—Dallas Mar. 30, 2020, no pet.) (mem. op.).

Appellants do not explain how the agreement and the addendum constitute a contract between Altera and any of them. The agreement and the addendum are, on their face, between appellant 5th Avenue and Hayden Holdings. Neither document mentions appellee Altera or any other entity with "Altera" in its name. Appellants do not argue that Hayden Holdings and appellee Altera are the same company, nor do they offer any argument or explanation why we should deem Altera a party to the

–14–

agreement or the addendum even though Hayden Holdings is identified as the sole client. Appellants cite authority for various rules regarding the statute of frauds and the Texas Uniform Electronic Transactions Act, but they do not explain how these rules make Altera a party to the agreement and addendum.

Appellants twice assert, with record references but without explanation, that Altera and appellants "are clearly parties to a contract as to the Project." We have reviewed the cited summary-judgment evidence, and we do not see how it raises a genuine fact issue that Altera was a party to either the agreement or the addendum.

Appellants also argue that Dipika Patel had apparent authority to bind Altera to a contract. But Patel's authority is irrelevant without evidence that Patel actually purported to make a contract for Altera. Patel signed the agreement and the addendum, but on the face of the documents she did so on behalf of Hayden Holdings, not Altera. Limited liability companies such as Altera are legally distinct entities, and appellants do not explain why we should conclude that Patel's execution of the agreement and the addendum on behalf of Hayden Holdings made Altera a party to those instruments. *See Willow Tree Consulting Grp., LLC v. Perkins Coie LLP*, No. 05-23-00264-CV, 2024 WL 575263, at *5 (Tex. App.—Dallas Feb. 23, 2024, pet. denied) (mem. op.) ("[L]imited liability companies . . . are legally distinct from their members."). In sum, appellants have identified no evidence showing that there was a valid contract between Altera and any of them.

We conclude that appellants have not shown that the trial judge erred by granting summary judgment as to appellants' breach-of-contract counterclaims.

## 2. Declaratory-Judgment Claim

Appellants' arguments discussed above are also germane to at least some of the declaratory relief granted to Altera. But because we have rejected appellants' arguments, and because appellants do not argue that we should analyze the declaratory relief differently from their breach-of-contract counterclaims, we conclude that appellants have shown no basis for reversing the declaratory relief awarded by the trial judge.

## C. Tortious Interference with Contract[1]

The elements of tortious interference with contract are (i) an existing contract subject to interference, (ii) a willful and intentional act of interference with the contract, (iii) proximate cause, and (iv) actual damages or loss. *AKB Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 236 (Tex. App.—Dallas 2012, no pet.). It is not necessary that the alleged tortious conduct result in an actual breach or cessation of the contractual relationship; it is sufficient if the tortious conduct makes performance more burdensome or difficult. *Id*. "As a matter of law, a party cannot interfere with its own contract." *Crestor Global Invs. Del. LLC v. Wilmington Tr.,*

---

[1] At oral argument, appellants' counsel made a statement that arguably indicated an intention to waive appellants' tortious-interference counterclaims, but because we are not certain that she so intended, we address those counterclaims on the merits.

*Nat'l Ass'n*, No. 05-19-00563-CV, 2020 WL 2537251, at \*3 (Tex. App.—Dallas May 19, 2020, pet. denied) (mem. op.).

Altera's summary-judgment grounds included (i) it could not liable for interfering with the agreement and the addendum if Altera was a party to that contract and (ii) otherwise, appellants had no evidence that Altera committed a willful or intentional act to interfere with that contract.

First, appellants assert that summary judgment was improper because Altera's no-evidence motion failed to attack any specific elements of tortious interference. This is incorrect. The penultimate paragraph of Altera's tortious-interference discussion includes challenges to specific elements.

Appellants also assert in their brief that this case falls within an exception to the rule that a party to a contract cannot commit tortious interference with that contract, but they do not support that assertion with argument or legal authority. Consequently, we reject the assertion. *See* TEX. R. APP. P. 38.1(i).

Finally, to the extent appellants argue that Altera interfered with a contract to which it was not a party, we conclude that appellants adduced no evidence of such an act of willful and intentional interference. The only act of interference appellants point to on appeal is that Altera paid a broker's fee to Avison Young, a company of which Terry Quinn was a principal. Assuming without deciding that appellants produced evidence of those facts, we conclude that appellants produced no evidence that Altera's payment to Avison Young constituted an act of interference. That is,

–17–

appellants adduced no evidence that Altera's payment to Avison Young either induced anyone to breach a contract with appellants or made any party's performance of a contract with appellants more burdensome or difficult.

We conclude that appellants have not shown that the trial judge erred by granting summary judgment on appellants' tortious-interference counterclaims.

## D.    Fraudulent Conveyance

Next we consider appellants' counterclaims under the Texas Uniform Fraudulent Transfer Act. *See* TEX. BUS. & COM. CODE ANN. § 24.001. As applicable to this case, the elements of a TUFTA claim are: (i) the plaintiff is a creditor with a claim against a debtor, (ii) the debtor transferred assets after or a short time before the plaintiff's claim arose, and (iii) the debtor acted with the intent to hinder, delay, or defraud the plaintiff. *See id*. § 24.005(a)(1); *Qui Phuoc Ho v. MacArthur Ranch, LLC*, No. 05-14-00741-CV, 2015 WL 5093273, at *3 (Tex. App.—Dallas Aug. 28, 2015, pet. denied) (mem. op.). Under the TUFTA, a debtor is "a person who is liable on a claim," and a claim is "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." BUS. & COM. § 24.002(3), (6). The relief available for a TUFTA claim includes avoidance of the transfer to the extent necessary to satisfy the creditor's claim. *Id*. § 24.008(a)(1).

Altera sought a no-evidence summary judgment on this counterclaim, contending that appellants had (i) no evidence of a debtor–creditor relationship between Altera and any appellant and (ii) no evidence that Altera incurred any obligation with the actual intent to hinder, delay, or defraud any appellant.

In their TUFTA argument, appellants do not address the element that Altera was a "debtor" in relation to one or more appellants. Because appellants do not address this summary-judgment ground, we must affirm the judgment as to their TUFTA counterclaims. *See Rosetta Res. Operating*, 645 S.W.3d at 226–27.

## E.    Conversion

The elements of conversion are (i) the plaintiff owned, possessed, or had the right to possess property, (ii) the defendant unlawfully and without authorization assumed and exercised control over the property, to the exclusion of or inconsistent with the plaintiff's rights, (iii) the plaintiff demanded return of the property, (iv) the defendant refused to return the property, and (v) the plaintiff was injured by the conversion. *Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 718 (Tex. App.—Dallas 2014, pet. denied). If the property in question is money, conversion will lie only if the money can be identified as a specific chattel, meaning it is (i) delivered for safekeeping, (ii) intended to be kept segregated, (iii) substantially in the form in which it is received or as an intact fund, and (iv) not the subject of a title claim by the keeper. *Id*.

One of Altera's summary-judgment grounds was that appellants' conversion counterclaims were for money and that the additional elements necessary for a conversion claim for money were absent on the facts of the case. Appellants do not address that summary-judgment ground in their appellate brief, so we must affirm the summary judgment as to their conversion counterclaims. *See Rosetta Res. Operating*, 645 S.W.3d at 226–27.

## F. Promissory Estoppel

The elements of promissory estoppel are (i) a promise, (ii) foreseeability of reliance thereon by the promisor, and (iii) substantial detrimental reliance by the promisee. *Mavex Mgmt. Corp. v. Hines Dallas Hotel Ltd. P'ship*, 379 S.W.3d 456, 460 (Tex. App.—Dallas 2012, no pet.).

Altera's summary-judgment grounds on promissory estoppel included a contention that appellants had no evidence of any promise made by Altera. On appeal, appellants are not entirely clear as to the alleged promise by Altera that they are relying on, but we infer from their argument that they are basing their promissory-estoppel counterclaims on an alleged promise by Altera to pay appellants a broker's fee for a loan in support of the Allen Project. According to their brief, "[t]he promise was broken by Appellee as the promised Broker's Fee was paid to Avison Young."

We agree with Altera that appellants adduced no evidence of a promise by Altera to pay appellants a broker's fee. Again, the only promise to pay a broker's fee

that we see in the summary-judgment evidence appears in the agreement and the addendum that were signed by Dipika Patel on behalf of Hayden Holdings. No evidence shows that Patel was purporting to act on behalf of Altera when she signed these documents or that Hayden Holdings and Altera are the same entity. Thus, the agreement and the addendum are no evidence of a promise by Altera.

Appellants also reference a confidentiality agreement as providing support for the existence of other promises by Altera. The evidence contains a confidentiality agreement dated June 14, 2016, that Terry Quinn sent to appellant Cooper regarding the Allen Project. The confidentiality agreement generally provides that Orsalo and "Sponsor," defined as "Altera Development Company, LLC and/or TCH Altera AHCC, LP (or its applicable affiliates . . .)" are having discussions about finding lenders for the Allen Project, and that Orsalo will protect the confidentiality of Sponsor's confidential information. But the confidentiality agreement says nothing about a broker's fee, and Quinn signed the confidentiality agreement only as CEO of Altera Development Company, LLC—not appellee TCH Altera AHCC, LLC. We conclude that the confidentiality agreement is no evidence of a promise by Altera to pay money.

For these reasons, we conclude that appellants have not shown the trial judge erred by granting summary judgment on appellants' promissory-estoppel counterclaims.

## G.     Money Had and Received

Although appellants pleaded this legal theory as "assumpsit," Altera asserted in its summary-judgment motion that this counterclaim was properly characterized as one for money had and received. On appeal, appellants accept that characterization. Money had and received is an equitable doctrine applied to prevent unjust enrichment. *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.). To prove a claim for money had and received, a plaintiff must show that a defendant holds money that in equity and good conscience belongs to the plaintiff. *Id*. at 814.

In its summary-judgment motion, Altera argued that appellants' money-had-and-received counterclaims were barred by a two-year statute of limitations and also failed because appellants had no evidence that Altera held any money that in equity and good conscience belonged to any appellant. In support of the no-evidence point, Altera noted that appellants had no evidence that Altera was a party to the agreement or the addendum or that Altera otherwise agreed to pay any appellant a broker's fee.

As to Altera's no-evidence point, appellants argue that they raised a genuine fact issue by adducing evidence that Altera paid the broker's fee for the Allen Project to an entity, Avison Young, that was controlled by the same person that controlled Altera itself, Terry Quinn. They also assert that Dipika Patel had authority to represent Altera in negotiations because she was listed as Altera's CFO in certain

Allen Project materials that were given to appellant Cooper. Finally, they claim that Altera had knowledge of and approved Patel's statements and actions

We are not persuaded by appellants' arguments. The question presented is whether equity and good conscience dictate that some portion of the loan proceeds Altera obtained for the Allen Project rightfully belongs to appellants. In our view, appellants' contention that Altera "fraudulently" kept the broker's fee by paying it to a company allegedly controlled by an Altera insider is unavailing. What Altera did with the loan proceeds related to the Allen Project—whether it paid them to an Altera insider, paid them to building contractors, or simply kept the proceeds for itself—simply does not show that any of those proceeds equitably and in good conscience belong to appellants.

Appellants' assertions about the evidence regarding Patel are also unavailing. Even if appellants adduced evidence that Patel was Altera's CFO and that Altera knew about and approved "actions and statements by Ms. Patel," they do not explain what Patel said or did that would justify a conclusion that some of the Allen Project loan proceeds equitably and in good conscience belonged to appellants. We note that to the extent appellants contend that Altera has been unjustly enriched specifically because appellants performed services that benefited Altera, the separate unjust-enrichment theory of quantum meruit is available (and was in fact pleaded by appellants). *See City of Harker Heights, Tex. v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 318 (Tex. App.—Austin 1992, no writ) ("Quantum meruit is founded

–23–

on the principle of unjust enrichment, but it involves the specific situation where plaintiff has performed services which benefitted defendant."). We address that theory below.

We conclude that appellants have not shown that the trial judge erred by granting summary judgment on their money-had-and-received counterclaims.

**H.     Common-Law Fraud**

The elements of fraud are (i) a material representation was made, (ii) the representation was false, (iii) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (iv) the speaker made the representation with the intent that the other party should act upon it, (v) the other party acted in reliance on the representation, and (vi) the other party thereby suffered injury. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam).

In its summary-judgment motion, Altera argued, among other things, that appellants had no evidence that Altera made any false, material representations.

Appellants' brief is vague as to the specific representations they are relying on, but they argue that Altera "used Appellants for their ability to put together financing packets and to procure financing for their project all while never intending to pay the Broker's Fee to the Appellants." Construing their brief liberally, we infer that they contend that Altera made a false promise to pay appellants a broker's fee for their work relating to financing the Allen Project. For support, appellants cite

only appellant Cooper's affidavit. We have reviewed the affidavit and find nothing in it that raises a genuine fact issue that Altera represented that it would pay appellants a broker's fee.

We conclude that appellants have not shown that the trial judge erred by granting summary judgment on appellants' fraud counterclaims.

## I.      Quantum Meruit

"To recover under quantum meruit, a claimant must prove that: (1) valuable services were rendered or materials furnished, (2) to the person sought to be charged, (3) which services or materials were accepted, used and enjoyed by that person, (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by him." *Fulgham v. Fischer*, 349 S.W.3d 153, 159 (Tex. App.—Dallas 2011, no pet.).

In its summary-judgment motion, Altera contended that appellants had no evidence that it (i) accepted or used any services by appellants or (ii) was reasonably notified of appellants' expectation to be paid for their services.

Appellants argue that their services consisted of preparing financial packets and submitting them to banks on Altera's behalf to seek financing for the Allen Project. They assert, without explanation, that Altera "accepted these services" and that Altera "had reasonable notice of Appellants['] expectation of payment for the services." For record support they cite only appellant Cooper's affidavit. Accordingly, we focus our analysis on that affidavit. *See King v. Wells Fargo Bank,*

–25–

*N.A.*, 205 S.W.3d 731, 735 (Tex. App.—Dallas 2006, no pet.) (stating that appellate court has no duty to search a voluminous summary-judgment record for evidence supporting appellant's position).

We first consider whether Cooper's affidavit raises a genuine fact issue that Altera accepted services from appellants. We conclude it does not.

According to Cooper's affidavit, she and appellant Nevarez sought funding for the Allen Project on Altera's behalf, and she describes their efforts with respect to three different lenders in turn: Liberty Funding, Texas Capital Bank, and IBC Bank. The first result of those efforts was a February 2016 letter of intent from Liberty Funding. Terry Quinn and Dipika Patel signed the letter of intent, and the letter was returned to Liberty Funding "on behalf of Altera THC, LLC and Hayden Holdings, Inc." But Cooper's affidavit does not show that either of these two entities is the same company as appellee Altera, whose full name is "THC Altera AHCC, LLC." Thus, Cooper's affidavit testimony about the Liberty Mutual letter of intent is no evidence that appellee Altera accepted any services from appellants relating to Liberty Mutual.

Next, Cooper's affidavit refers to a funding package that was submitted to Texas Capital Bank. Cooper says that in May 2016, after that submission, Quinn contacted her and asked her how her company was involved in the Allen Project. She told him that "we have been working diligently to secure financing [for the Allen Project] in a tough market." Quinn asked Cooper for a copy of the loan packet she

had sent to Texas Capital Bank, and she sent it to him. Thereafter, Cooper and Quinn had conversations in which he confirmed that Patel was "the authorized representative for TCH Alterra [sic] in regards to securing funding for the project." But Cooper does not say that Patel ever "accepted" appellants work on the Texas Capital Bank proposal. Additionally, we note that Quinn did not purport to be acting on appellee Altera's behalf in his emails to Cooper around this time. He signed the email in which he inquired about Cooper's involvement as CEO of "Altera Development Company, LLC," and he signed another email sent to Cooper the next day without indicating the capacity in which he was acting. We conclude that Cooper's affidavit constitutes no evidence that appellee Altera accepted any work by appellants on the Texas Capital Bank proposal.

Finally, Cooper's affidavit describes her work on a financing package "on behalf of TCH Alterra [sic] to IBC Bank" at the end of May and beginning of June 2016. According to Cooper, she submitted the package to IBC Bank on May 25, and thereafter she had telephone conversations about the IBC Bank proposal with Patel and Quinn. On June 14, Quinn told Cooper that he was concerned about Patel and her "professionalism," and he sent her a "Limited Partnership Agreement for Altera" as well as a confidentiality agreement "on behalf of Altera Development Company, LLC (and THC Altera AHCC, LP and any related entities)." Quinn also said in an email to Cooper, "I will call you shortly regarding your text regarding fee agreement." On June 17, 2016, Cooper sent Quinn a new fee agreement by email.

But Cooper's affidavit does not say that Quinn ever returned the fee agreement, and the next event she recounts is that in July 2017 she confirmed that the Allen Project had funded and ground had been broken for construction. Again, nothing in Cooper's affidavit about the IBC Bank proposal shows that appellee Altera ever accepted those services.

We conclude that appellants have not shown that the trial judge erred by granting summary judgment against them on their quantum-meruit counterclaims.

## J. Constructive Trust

A constructive trust is an equitable remedy imposed to prevent unjust enrichment. *Smith v. Deneve*, 285 S.W.3d 904, 910–11 (Tex. App.—Dallas 2009, no pet.). To obtain a constructive trust, a claimant must prove (i) actual fraud or breach of a special trust or fiduciary relationship, (ii) unjust enrichment of the wrongdoer, and (iii) tracing to an identifiable res. *Id*. at 911.

Appellants argue that Altera's summary-judgment motion did not identify the specific elements of a constructive trust as to which appellants had no evidence. We disagree. Altera's motion recited the elements necessary for imposition of a constructive trust and asserted that (i) appellants had not pleaded a special trust or fiduciary relationship and (ii) appellants had not proved fraud for the reasons previously set forth in the motion. Appellants do not dispute that they did not plead that a special trust or fiduciary relationship existed between them and Altera. And we conclude that Altera's motion gave appellants fair notice that Altera was

contending that appellants had no evidence of fraud—which they did plead—as Altera had argued earlier in the motion.

We have already upheld Altera's no-evidence summary judgment as to appellants' fraud counterclaims. Because fraud is an essential element of appellants' request for a constructive trust as pleaded, we likewise uphold the summary judgment as to their request for a constructive trust.

## K.    Attorneys' Fees

Finally, appellants argue that we should reverse the award of attorneys' fees to Altera solely because the trial judge erred by granting summary judgment to Altera on certain other issues, such as the non-existence of a valid contract between appellants and Altera. Because we are affirming the rest of the summary judgment, we reject appellants' attack on the award of attorneys' fees.

## VI.    DISPOSITION

We affirm the trial court's judgment.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

221295F.P05



# Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

CAMILLE COOPER, ROBERT NEVAREZ, THE ORSALO GROUP, LLC, LARRY COOK, and 5TH AVENUE ACQUISITIONS & VENTURE CAPITALISTS, LLC, Appellants

No. 05-22-01295-CV    V.

TCH ALTERA AHCC, LLC, Appellee

On Appeal from the 471st Judicial District Court, Collin County, Texas Trial Court Cause No. 471-06464-2018.
Opinion delivered by Justice Garcia. Justices Reichek and Goldstein participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee TCH Altera AHCC, LLC recover its costs of this appeal from appellants Camille Cooper, Robert Nevarez, The Orsalo Group, LLC, Larry Cook, and 5th Avenue Acquisitions & Venture Capitalists, LLC.

Judgment entered this 7th day of August 2024.

–30–